In the Matter of GAVIN P. MURPHY, Respondent, v. FIDUCIARY COUNSEL, INC., et al., Appellants.— Judgment, Supreme Court, New York County,

entered on June 14, 1972, granting petitioner access to certain records, reversed, on the law and facts, without costs and without disbursements, and the petition dismissed. A former director may have a qualified right to inspect the corporate books and records covering the period of his directorship whenever the director can make a proper showing by appropriate evidence that such inspection is necessary to protect his personal responsibility interest, as well as the interest of the stockholders. This record fails to establish facts which would warrant such inspection. There is no satisfactory or convincing proof that any basis exists for a reasonable probability that this petitioner has or might have a personal responsibility interest to protect during his stewardship so as to warrant the exercise of judicial discretion to grant him the relief he seeks. The record establishes that petitioner has been given substantial information but not the names of clients and certain so-called evaluation reports. The petitioner was a director for only one year. He was never a stockholder. He has not been sued, nor has anyone threatened to sue him. There is no substantial showing that petitioner has been or may be reasonably charged with malfeasance or nonfeasance during his incumbency. (*Matter of Cohen* v. *Cocoline Prods.*, 309 N. Y. 119, 14 Misc 2d 720.) Further it was asserted on the argument and not contested that certain data cards identical with the so-called evaluation reports in terms of content have been inspected by the petitioner. The record shows inspection of data cards identical with the so-called evaluation reports by petitioner. Page 110a of the record is a letter dated October 31, 1971 to Mr. Gavin P. Murphy, the petitioner-respondent, from one Hiram L. McDade, vice president and secretary of the respondents-appellants Fiduciary Counsel, Inc. It reads in part as follows: " I offered for your inspection the panel cards of every account under our supervision, reflecting its complete investment history. You have examined some of these and they will continue to be available for your inspection on reasonable notice." In view of the record there is no basis for the conclusory statement in the minority memorandum referring to inspection of certain data cards that the said inspection " is not supported by the record ". Concur — Stevens, P. J., Markewich and McNally JJ.; McGivern and Nunez, JJ., dissent in a dissenting memorandum as follows: Petitioner was elected a director on June 10, 1970 by the cumulative vote of a minority shareholder who owns 39% of the outstanding shares of Fiduciary Counsel, Inc., and remained a director until May 12, 1971. His two codirectors, representing the majority control, from the very beginning of petitioner's election, froze him out of the management of the corporation; the board of directors never met, and the two colluding directors made all decisions, refusing him inspection of the corporate books or information as to the company's management. This article 17 proceeding to enforce his rights to inspect the corporation's books followed. Special Term properly permitted access to the records, not previously furnished to petitioner, consisting of the identity of the customers and evaluation reports for the period petitioner was a director. Had petitioner's unqualified right as an incumbent director to inspect been honored, when request was first made, following his selection as a director, the sought inspection could have been completed before his term of office expired. The record conclusively reflects appellants' obdurate and persistent campaign to frustrate petitioner's long-pursued efforts, initiated from the beginning, to justify his standing as a fiduciary of this corporation. The New York law has been stated by the Court of Appeals in *Matter of Cohen* v. *Cocoline Prods.* (309 N. Y. 119, 124) as follows: " *Directors*, while in office, must protect not only their own interests, but also those of the corporation and of the stockholders; consequently * * * their right to inspect has been

made *absolute*. While his duty to the corporation and to the stockholders ceases upon termination of his office, he may still have a personal responsibility interest to safeguard, the protection of which could very well inure to the benefit of the stockholders by a disclosure to them of any derelictions by other directors or officers. And this is more likely in the case, as here, of a director of long service who unexpectedly fails of re-election just at a time when he was about to undertake an investigation in his capacity as director." Petitioner has demonstrated sufficiently that he has a personal responsibility interest to safeguard — one which may indeed inure to the benefit of the minority interests whom he represented. When it is understood that the majority directors oversee the operations of the corporate appellant, enjoy personal remuneration therefrom and have resolved to exclude the minority shareholders from participation in profits by decreeing the elimination of dividends — all in the context of corporate losses, in the period during which petitioner was a director — the petitioner's jeopardy for failing to uncover possible derelictions by his antagonistic codirectors becomes manifest. And in any event, the defendants have not sustained their burden of proving the petitioner's motive is illegal. To the contrary, the hearing and report of the Special Referee absolved him of any conflict of interest. The two directors may find petitioner's persistency a bit exacerbating, but during his time as director he did have a right, if not a duty, of inquiry, particularly in respects of SEC filings, wherein if a false report was filed, his exposure to liability is clear. The *Cocoline* case (*supra*) obviously does not stand for and lends no support to the position that a prerequisite for a director's access to the books is that he first be sued or that someone threaten to sue him. And as to the claim of secrecy, this may be inviolate, as a matter of internal policy, as to third parties, but such confidentiality can hardly be violated when revealed to a responsible director. Nor does the Investment Advisors Act of 1940 (U. S. Code, tit. 15; § 80b-1) raise any such prohibition as to a director. The majority's allusion to an inspection of certain data cards by the petitioner is not supported by the record. Appellants' counsel both at argument and in his brief stated that "Murphy was *offered* access to, but generally *refused* to examine the account panel cards" (italics supplied). We vote to affirm.